STEPHEN A. POOLER *vs.* WILLIAM BURTON, Town
Treasurer

APRIL 13, 1917.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)   Highways.   Repair.*
The duty of towns and cities to keep their highways in repair, being
imposed by statute, cannot be qualified by anything of less authority,
but by statute it can be qualified either expressly or by implication.

*(2)   State Roads.   Repair of Highways.*
Under Gen. Laws, 1909, cap. 84, State roads are directly under the control
of the State, and, with the exception of the removal of snow and ice,
the responsibility for the proper repair and maintenance of the entire
State highway rests upon the State, and a town is not under obligation
to keep in repair or to provide a railing for the part of the highway
representing the width thereof outside of the part actually constructed
by the State Board of Public Roads.

TRESPASS ON THE CASE for neglect to keep in repair a
public highway.   Heard on exception of plaintiff and
overruled.

STEARNS, J.   This is an action of trespass on the case
against the Town of Johnston for neglect to keep in re-
pair a certain public highway in said town, by reason of
which the plaintiff suffered damage to his person and
property.

The declaration charges '' that within the limits of said
highway, outside of and adjacent to the central part of
said highway constructed and accepted by the State,
there was a steep place or decline, and there was not and
had not been for a long time prior thereto any sufficient
railing or any railing whatsoever to protect travelers
from going off or falling off the traveled part of said
highway down said steep place or decline; '' that the
plaintiff, who was unacquainted with said highway, while

driving his automobile at night was obliged to turn to the right side of the highway in order to pass an automobile approaching from the other direction and " that on account of the road being narrow as aforesaid and on account of there being no railing as aforesaid at said place, the said automobile went down said steep place or bank, outside of the said central part of said highway, constructed and accepted as aforesaid by the State." That it was the duty of the town to keep in repair and amend that part of said highway " outside the central part thereof constructed and accepted by the State " so that the same should be safe and convenient for travelers.

The defendant, by a special plea, avers that " that certain highway mentioned in plaintiff's declaration was a public road and a part of the same was constructed by the State Board of Public Roads of said State of Rhode Island, prior to the time when said plaintiff was injured upon the highway mentioned in said plaintiff's declaration. And also avers that said highway was improved by said Board of Public Roads prior to the accident to said plaintiff mentioned in said declaration, and that said highway mentioned in said plaintiff's declaration was, prior to the accident mentioned in said plaintiff's declaration, and ever since, under the care, control and supervision of said State Board of Public Roads."

The plaintiff demurs on the ground that the defect in said highway was entirely outside of the part of said highway constructed and improved by the State, and under the control of the State Board of Public Roads and that the town is still liable to keep that part of the highway which was defective in repair and safe for travel and to provide a rail at the side of said road. (See Sec. 1, Chap. 83; Sec. 15, Chap. 46, Gen. Laws, R. I., 1909.) This demurrer was overruled by the Superior Court to which ruling the plaintiff took an exception, and this exception is now by bill of exceptions before this court.

The plaintiff concedes that the State, through the State Board of Public Roads, has exclusive control over so much of this highway as it has constructed or repaired, but claims that the town is obliged to keep in repair and safe condition the remainder of the highway.

There are no decisions in this State covering this precise point. The cases of *McCommiskey* v. *Greene,* 32 R. I. 402, and *Johnson* v. *Lee,* 38 R. I. 316, are cases in which the duties of the State, and the towns and cities were defined in regard to bridges lying in public highways.

In deciding this case the court must seek to ascertain the intent of the Legislature as manifested in the statutes. (1) The duty of the towns and cities to keep their highways in good repair, being imposed by statute cannot be qualified by anything of less authority. But by statute it can be qualified, and qualified, too, either expressly or by implication. *Williams* v. *Tripp,* 11 R. I. 447, at p. 454. Chapter 84, Gen. Laws, R. I., 1909, " Of the Construction, Improvement, and Maintenance of State Roads," which was enacted in 1902, made a distinct departure in the policy of this State in regard to the main highways of the State. Prior to that time the control and maintenance of these highways was almost entirely left to the towns and cities. By this act provision was made for the establishment of a State highway system under the control of a State Board of Public Roads. In 1912 (Secs. 6 and 7, Chap. 846, Public Laws) bridges on State roads were made a part of the State highway system.

Section 3 of said Chapter 84 requires this board to make an annual report to the Legislature making recommendations for relocating, regrading, or improving the main highways of the State as it shall deem for the best interests of the entire State; and it further provides that no work other than preliminary surveys, shall be done until said report shall have been approved by the General (2) Assembly and the money appropriated for such purpose.

Section 4, subsequently amended by Chapter 799, Public Laws, R. I., provides for the width of construction (from fourteen to eighteen feet); it is further provided that " any town or city desiring to have a highway constructed or improved of a greater width than the width determined upon by said board, may agree in writing with said board for such additional width as such town or city may desire, providing the entire expense of such additional width shall be paid by such town or city to the General Treasurer, and be credited to the amount available for use by said board." These two sections indicate clearly that it is the interest *of the entire State,* rather than that of any particular locality, which is to govern in the improvement of a State highway; and if any increase in width is desired by the towns or cities it is to be made by agreement with and under the direction of the State Board. It is evident that the Legislature intended to have no divided control in regard to this latter particular.

Section 6 provides as follows: " Every public road, any part of which is constructed or improved as aforesaid, or after the plans and specifications aforesaid have been filed and contract for the construction or improvement of such road or part thereof has been made as aforesaid, shall be known as a state road and be kept in good repair from the time of said construction and improvement at the expense of the state under the supervision of said state board. Every such town or city shall at its own expense keep such state road within its limits, respectively, sufficiently clear of snow and ice so that the same shall be reasonably safe for travel as now required by law, and shall at once notify in writing the state board of public roads or its employees of any defect or want of repair of such roads." The reënactment of the existing duty of the towns and cities in regard to the removal of snow and ice would seem to indicate that this is the extent

of the obligation in regard to the maintenance of State highways now imposed upon the towns and cities.

If there is a defect or want of repair in such State road, the town or city is directed to notify in writing the State Board of Public Roads or its employees, but no penalty is provided for a failure to report such defect or want of repair. If the duty of the towns and cities to repair such highways was to continue unchanged, there is no apparent reason to direct that such report should be made to the State Board. It is not unfair to assume that this latter clause was inserted for the benefit of the towns and cities to secure to them prompt action by the State Board in cases where repairs were needed.

The intention of the Legislature seems to be clear, that State roads should be directly under the control of the State and that, with the exception of the removal of snow and ice, the responsibility for the proper repair and maintenance of the entire State highway rests upon the State, and not partly upon the State and partly upon the towns and cities, as claimed by the plaintiff.

Section 7 of this act has reference to the entire space in a State road regardless of the width actually constructed therein by the State Board; it provides that "fences, buildings, sheds, or other obstructions encroaching upon such state road shall upon written notice by said state board at once be removed by the owner or occupier of adjoining land, and if not so removed said board may cause the same to be removed upon the adjoining land of such owner or occupier." Such obstructions *on any part of the highway* also come under the jurisdiction of the State Board.

This section in addition provides that any owner of land adjoining a State road sustaining damage by the construction, change of grade, *etc.*, of such road may be compensated. No provision, however, is made for injuries due to lack of repair of said State highways. But the

failure to provide such a remedy is a matter for legislative and not judicial consideration.

Our conclusion, therefore, is that the town was under no obligation to keep in repair or to provide a railing for the part of the highway in question; that the plea in bar is good and that the demurrer thereto was properly overruled.

The exception of the plaintiff is overruled and the case is remitted to the Superior Court for further proceedings.

*A. B. Crafts,* for plaintiff.

*Tillinghast & Lynch,* for defendant.