Cynthia **PULLEN**

v.

**STATE of Rhode Island and City of Newport et al.**

**No. 96–333–Appeal.**

Supreme Court of Rhode Island.

Feb. 5, 1998.

Stephen G. Linder, Providence, for Plaintiff.

Melody A. Alger, Elizabeth A. Wallace, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on appeal by Cynthia Pullen (plaintiff or Pullen) from a grant of summary judgment entered in Superior Court in favor of the city of Newport (defendant or city). The plaintiff sued the city of Newport for the negligent failure to repair a defect in the sidewalk located adjacent to America's Cup Avenue, which defect she claimed caused her to fall and sustain serious personal injury. The sole issue before us is whether the city has a duty to maintain a sidewalk that is located within its borders but which the state owns, constructed, and agreed to maintain. We conclude that it does not, and for the reasons set forth below, we affirm the summary judgment entered in the Superior Court. The undisputed facts underlying this appeal are as follows.

On or about May 3, 1992, Pullen tripped on a raised portion of the sidewalk located along America's Cup Avenue in Newport, Rhode Island. As a result she fell against a cement planter and sustained injuries to her face and arm. The sidewalk upon which Pullen tripped is owned by the State of Rhode Island and is within the state highway line. The state constructed America's Cup Avenue and the subject sidewalk after executing a 1968 construction and maintenance agreement with the city of Newport whereby the state assumed full responsibility for maintaining the roadway and its appurtenances. The maintenance agreement contained no expiration date and was signed by the state purchasing agent, the chief engineer for the department of transportation, and a then-assistant attorney general on behalf of the state.

On March 22, 1995, Pullen filed a complaint in Superior Court, alleging that Newport, the State of Rhode Island, Long Wharf Mall Associates, Ltd. (Long Wharf), and CIC–Newport Associates, Ltd. (CIC), were negligent in failing to maintain the sidewalk in a reasonably safe condition for pedestrian travel. The plaintiff subsequently dismissed her complaints against Long Wharf, and CIC, because neither entity had an ownership interest in or control over the sidewalk at issue.

On July 7, 1995, the city filed a motion for summary judgment, arguing that it owes plaintiff no duty to maintain a sidewalk that the state owns, built, and agreed to maintain. The state also filed a motion for summary judgment, alleging that pursuant to G.L.1956 § 24–5–1 the city, not the state, has a statutory obligation to maintain all sidewalks found within its borders. On May 20, 1996, the trial justice entered summary judgment in favor of the city and denied the state's motion for summary judgment. The plaintiff and the state then filed separate appeals to this court. The state later withdrew its appeal, limiting our review in the present case to the issues raised by plaintiff.

■ The plaintiff contends on appeal that regardless of whether the state owns and controls a particular sidewalk as part of the state highway system, the city has a mandatory obligation pursuant to § 24–5–1 to keep all sidewalks within its borders in good repair. She asserts that § 24–5–13 imposes liability upon a municipality for personal injuries caused by the city's failure to keep such sidewalks in reasonably safe condition. According to plaintiff, the duty imposed by § 24–5–1 is nondelegable, rendering any attempt by the city to assign to the state the duty of roadway maintenance void, even if such maintenance concerns state-owned and controlled sidewalks. In support of her position plaintiff relies upon the case of *Child v. Greene*, 51 R.I. 477, 155 A. 664 (1931), wherein this court held that, absent legislation showing a contrary intention, a town was not relieved of its statutory obligation of maintaining a city sidewalk located adjacent to a state highway simply because that sidewalk is later adopted as a part of the state highway system. *Id.* at 479, 155 A. at 665.

The city, on the other hand, contends that G.L.1956 §§ 24–8–6 and 24–8–9 place upon the state the duty of constructing and maintaining state sidewalks located along state highways. Specifically it argues that § 24–8–6 authorizes the director of transportation to construct sidewalks adjacent to state roads when he or she believes such sidewalks are required and that § 24–8–9 authorizes the

director "to alter, [and] * * * to keep in good condition * * * all sidewalks * * * on state roads; except, on * * * portions of state roads in cities * * * where the territory contiguous thereto is closely built up." [1] The city asserts that pursuant to this authority the state constructed the subject sidewalk as part of the Memorial Boulevard Extension and contracted to be responsible for its general maintenance. The city also argues that the statutory analysis adopted by this court in *Child*, 51 R.I. at 479, 155 A. at 665, is not controlling because in that instance the court resolved the issue of municipal liability pursuant to a statutory scheme that predated the enactment of §§ 24–8–6 and 24–8–9 by four years.

■ Summary judgment, we have stated, is a drastic remedy that should be cautiously applied. *Russian v. Life–Cap Tire Services, Inc.*, 608 A.2d 1145, 1147 (R.I.1992). In passing upon a motion for summary judgment, this court applies the same standard as the trial justice and reviews the pleadings and affidavits in a light most favorable to the party opposing the motion. *Id.* We shall affirm a trial justice's order granting summary judgment when our review reveals no issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; *Alfano v. Landers*, 585 A.2d 651, 652 (R.I.1991). The only question remaining in the present case is whether the city owed plaintiff a statutory duty to maintain the subject sidewalk in a reasonably safe condition. This question is one of law, not one of fact. *See Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.*, 640 A.2d 950, 955 (R.I. 1994) (explaining that whether a duty runs from a defendant to a plaintiff is a question of law); *accord Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1224 (R.I.1987). In resolving this issue, the court must seek to ascertain the intent of the Legislature in enacting chapter 5 of title 24, entitled "Maintenance of Town Highways," and chapter 8 of title 24, entitled "Construction and Maintenance of State Roads," and how specific provisions of these chapters interact under the facts of this case. In so doing, we examine

---

**1.** In the present case the trial justice took judicial notice that the area where plaintiff fell is not

closely built up, and this determination has not been challenged by plaintiff on appeal.

" 'the language, nature and object of the statute' * * * 'in light of circumstances motivating its passage.' " *In re Kyle S.*, 692 A.2d 329, 331 (R.I.1997). The statute is considered in the context of the entire statutory scheme, and we shall attribute to it the meaning most consistent with the statute's underlying policies and purposes. *Id.* at 331. With these principles in mind, we begin our analysis with a discussion of the specific statutory provisions themselves.

■ The liability of a city or a town to compensate a person injured by reason of a defect in a highway is wholly statutory. *O'Reilly v. Town of Glocester*, 621 A.2d 697, 701 (R.I.1993); *Barroso v. Pepin*, 106 R.I. 502, 504–05, 261 A.2d 277, 278–79 (1970). In Rhode Island the duty of a municipality to repair and amend its roadways is set forth in § 24–5–1, which provides in pertinent part:

"(a) All highways * * * lying and being within the bounds of any town, shall be kept in repair * * * so that the highways * * * may be safe and convenient for travelers * * * at the proper charge and expense of the town, under the care and direction of the town council of the town, provided that the state shall be responsible for the annual cleaning of all sidewalks on all state highways, causeways, and bridges."

The town's duty to keep its roads in good repair has been interpreted by this court to include maintaining sidewalks located adjacent to the roadway. *Barroso*, 106 R.I. at 508, 261 A.2d at 280; *Hoyt v. Allen*, 55 R.I. 360, 362, 181 A. 411, 412 (1935); *Child*, 51 R.I. at 479, 155 A. at 665; *see also Alfano*, 585 A.2d at 652 ("[t]ogether, a sidewalk and a roadway make up a highway or a street"). Section 24–5–13 renders cities and towns liable to those who suffer injury to their person or property because of the town's failure to comply with the obligations set forth § 24–5–1.[2] *Barroso*, 106 R.I. at 504–05, 261 A.2d at 278–79 (explaining that § 24–5–13 abrogates municipal immunity as it relates to defects in the roadway). The remedy provided by the Legislature to those injured by a defect in the roadway consists of the right to bring suit against the negligent municipality. General Laws 1956 § 45–15–8; *see also Bierman v. Shookster*, 590 A.2d 402, 404 (R.I.1991); *Barroso*, 106 R.I. at 504–05, 261 A.2d at 279. Specifically any person who has sustained injuries

"by reason of a defect, want of repair * * * in or upon a public highway * * * in any town which *is by law obliged to repair and keep the same in a condition safe and convenient for travelers* * * * which injury or damage might have been prevented by reasonable care and diligence on the part of the town * * * may recover * * * the amount of damages, sustained thereby, if the town had reasonable notice of the defect, or might have had notice thereof by the exercise of proper care and diligence on its part." Section 45–15–8. (Emphasis added.)

■ ▪ The establishment and maintenance of public highways are functions of the state. *Di Palma v. Zoning Board of Review of Bristol*, 72 R.I. 286, 288, 50 A.2d 779, 780 (1947). Supervision and control over public highways, we have observed, may be exercised directly by the state or delegated to subordinate governmental agencies, such as municipalities, as the Legislature deems fit. *Id.* Any such delegation may be revoked by the Legislature at will. In this case the state assumed the responsibility and duty that otherwise would have been imposed upon the city.

Prior to the enactment of chapter 8 of title 24, the state had delegated control and maintenance of the state's main highways to cities and towns pursuant to § 24–5–1. G.L. 1896, ch. 72, § 1; *see Wroblewski v. Clark*, 88 R.I. 235, 242, 146 A.2d 164, 168 (1958) (recognizing that by the provisions of § 24–5–1 the state has delegated to municipalities the duty to keep public highways safe for the benefit of all and not municipal inhabitants alone). Then in 1902 the Legislature decided to centralize control of the state highways by re-

---

**2.** General Laws 1956 § 24–5–13 provides in pertinent part,

"(a) The cities and towns shall also be liable to all persons who may in any way suffer injury to their persons or property by reason of any neglect, to be recovered in a civil action."

turning to the state supervision and control of roads designated as part of the state highway system. P.L.1902, ch. 982; *see also Pooler v. Burton,* 40 R.I. 249, 251, 100 A. 465, 466 (1917) ("[b]y this act [P.L.1902, ch. 982] provision was made for the establishment of a State highway system under the control of [the] State"). Accordingly a state board of public roads was established and made responsible for submitting to the Legislature each year a comprehensive plan enumerating the main highways that needed to be relocated, regraded, constructed, or improved. P.L. 1902, ch. 982. Once moneys had been appropriated for that purpose, the board, pursuant to its statutory authority, made all contracts necessary to implement its plan. P.L.1902, ch. 982, § 5. Cities and towns that maintained and repaired those highways within their borders that had been adopted as part of the state highway system were reimbursed with state funds. P.L.1902, ch. 982, § 3. Pursuant to this statutory framework we held in *Pooler,* 40 R.I. at 253–54, 100 A. at 466, that a town owed no duty to maintain at the side of a state road a railing to protect individuals from driving off the road and down a steep embankment. State roads, we held, are directly under the control of the state, and with the exception of the removal of snow and ice the responsibility for repairing them rests with the state. *Id.* at 252–54, 100 A. at 466; *see also Tucci v. Gill,* 598 A.2d 1376, 1377 (R.I.1991) (explaining that town owed no private duty to motorist for failing to remove snow and ice from state highway pursuant to the provisions of § 24–8–15).

Fourteen years later we decided the case of *Child v. Greene.* The plaintiff in *Child* was injured as a result of stepping into a hole in a sidewalk located adjacent to a city street that had, at the time of the accident, been adopted as part of the state highway system. 51 R.I. at 477–78, 155 A. at 664. This court noted that before the state board rebuilt the street as part of the state highway system, the duty to maintain the entire street including its sidewalk rested upon the town. *Id.* After the street had become part of the state highway system, we noted that it was the duty of the state board to keep the street in good repair. *Id.* Notwithstanding this con-

clusion we remarked that no statute specifically relieved the town of the obligation of maintaining sidewalks adjoining state roads or imposed that duty upon another entity. *Id.* at 478–79, 155 A. at 664. In examining the then-extant statutory scheme, the court noted that § 24–7–8, enacted in 1928, authorized towns to construct sidewalks along state highways subject to the approval of the state board. 51 R.I. at 479, 155 A. at 664. The court concluded, therefore, that "in the absence of legislation showing a contrary intention," the General Assembly, having authorized towns to construct sidewalks adjoining state highways subject to the approval of the state board, must have intended that towns remain obligated to maintain those sidewalks in a condition safe for travel. *Id.* at 479, 155 A. at 665.

Four years following the decision in *Child,* the General Assembly enacted P.L.1935, ch. 2269, § 2, the predecessor to §§ 24–8–6 and 24–8–9. The purpose of the act was to amend chapter 97 of the General Laws, entitled "Of the Construction, Improvement, and Maintenance of State Roads and Bridges." The amendment authorized the director of public works to construct sidewalks along either side of a state road and empowered the director to maintain those sidewalks by altering, repairing, and removing ice and snow and any other obstruction "which project over all curbs and all sidewalks * * * on said state highway; *except,* on * * * portions of said state highways in cities or towns where the territory contiguous thereto is closely built up." P.L.1935, ch. 2269, § 30. The provisions of the act have remained substantially the same to this date and may be found, in part, in §§ 24–8–6 and 24–8–9, respectively. Section 24–8–6 provides:

"**Authority for sidewalks and curbs.**— The director of transportation *shall have the power and authority to make, lay in and upon, and construct sidewalks,* including curbs, adjacent to and along either or any one side or both sides of any state road, now constructed, in the process of construction, or to be constructed, which in his or her opinion and judgment require

sidewalks and curbs for pedestrian travel." (Emphasis added.)

And, § 24–8–9 provides:

"**Regulations of sidewalks and curbs.**—*The director of transportation shall have the power and authority to alter, to maintain, to keep in good condition,* to remove ice and snow therefrom, to remove posts, steps and any other obstructions therein, to regulate the placement, structure, and alteration of curbs constructed adjacent to state roads, to regulate the height, size, and shape of awnings, signs, and any other structures which project over all curbs and *all sidewalks now constructed,* in the process of construction or to be constructed on state roads; except, on portion or portions of state roads in cities or towns where the territory contiguous thereto is closely built up." (Emphases added.)

Under §§ 24–8–6 and 24–8–9 the director of transportation has the power and the authority to construct, to alter, and to maintain state sidewalks located along "any one side or both sides of any state road." Pursuant to this statutory authority and other provisions embodied in chapter 8 of title 24, the state entered into a construction and maintenance agreement with the Redevelopment Agency of the City of Newport whereby the state agreed to construct and maintain the Memorial Boulevard Extension in the city of Newport as a part of the state highway system. The Memorial Boulevard Extension includes what is now known as America's Cup Avenue. As part of the agreement, under a section entitled "Future Maintenance," the state agreed to "be responsible for the maintenance of the entire highway *and appurtenances* with the exception of the Agency's facilities * * * [which] facilities includ[e] sewer, water, drainage, and fire alarm systems." (Emphasis added.) It is undisputed that the area upon which plaintiff fell was developed by the state as the Memorial Boulevard Extension and is part of the area referenced in the maintenance agreement.

The plaintiff nonetheless contends that the trial justice erred by relying on the construction and maintenance agreement executed by the state on the grounds that the city's duty

under § 24–5–1 is nondelegable and thus cannot be contractually committed to the state or any other entity. She relies upon this court's decision in *Eaton v. Follett,* 48 R.I. 189, 136 A. 437 (1927), in support of her position. In *Eaton* the city of Woonsocket hired an independent contractor to remove trees from city sidewalks and to fill in the resulting excavations with dirt. *Id.* at 190–91, 136 A. at 437. The removal of one of those trees by the independent contractor rendered unsafe the sidewalk upon which the plaintiff was injured. *Id.* at 191, 136 A. at 437. In those circumstances the court held that a municipality may be liable for failing to supervise the work of an independent contractor hired for the purpose of repairing streets and sidewalks. *Id.* at 192–93, 136 A. at 438. However, the rationale espoused in *Eaton*—that a city may be liable for the failure to supervise the work of an independent contractor—cannot operate to deprive the state of its statutory power to construct and maintain state sidewalks fortuitously found within municipal borders. Contrary to plaintiff's assertion, a municipality is a mere agent of the state as it relates to the maintenance of public highways and other governmental functions and not the reverse. *See Di Palma,* 72 R.I. at 288, 50 A.2d at 780.

In our opinion the Legislature clearly intended, by enacting §§ 24–8–6 and 24–8–9, to provide the state with the authority to enter into contracts regarding the construction and maintenance of state sidewalks and to fix the responsibilities of the state and municipalities in regard to the same. To conclude otherwise would render §§ 24–8–6 and 24–8–9 nugatory. This argument would suggest that the Legislature has given with one hand and taken away with the other. We shall "not ascribe to the Legislature an intent to enact legislation that is devoid of any purpose, is inefficacious, or is nugatory." *Cocchini v. City of Providence,* 479 A.2d 108, 111 (R.I.1984) (citing *Kingsley v. Miller,* 120 R.I. 372, 388 A.2d 357 (1978)). It strikes us as highly unlikely, therefore, that the Legislature intended to require municipalities to maintain a state-constructed sidewalk after the state has contracted to maintain the sidewalk pursuant to its statutory authority.

None of the cases relied upon by plaintiff may be construed to impose liability on a municipality in circumstances such as these.

Equally unavailing is plaintiff's claim that the city has assumed the duty of keeping the sidewalk safe for pedestrian travel by its acceptance of that duty in the past. In such an instance § 45–15–11 provides:

> "No work done by any city or town, upon any way or street, in mending or repairing the way or street, shall constitute or be any evidence of an acceptance of the way or street by the city or town, nor shall it in any way change the status of the way or street; *and the mending or repairing of the way or street shall in no way render the city or town liable to pay compensation or damages by reason of injuries suffered by any person or persons traveling upon the way or street.*" (Emphasis added.)

As a final matter we recognize that in 1988 the General Assembly enacted sweeping legislative changes in respect to the jurisdiction over state and municipal highways in P.L. 1988, ch. 633, § 4, "An Act Relating to Highway Jurisdiction and the Pavement Management Program." The act, however, need not be considered by us in disposing of the present case because the Legislature, having enacted §§ 24–8–6 and 24–8–9 in 1935, gave the state authority to enter into contracts to construct and maintain state sidewalks along state roadways. Consequently the state's execution of the construction and maintenance agreement with the city of Newport wherein it unequivocally agreed to maintain the subject sidewalk divested the city of any duty to maintain the sidewalk. Accordingly the city owed the plaintiff no duty to keep the subject sidewalk safe for pedestrian travel.

For the reasons stated, the plaintiff's appeal is denied and dismissed and the judgment of the Superior Court is affirmed. The papers of the case may be remanded to the Superior Court.