DECISION
Before the Court is an administrative appeal wherein the appellant Blue Cross and Blue Shield of Rhode Island ("Blue Cross") seeks reversal of a Decision and Order of the Director of the Department of Business Regulation ("Director"), which found Blue Cross in violation of the "Small Employer Health Insurance Availability Act," G.L. 1956 § 27-50-1
et seq., as amended by P.L. 2000, chs. 200 and 229 (the "Act"), and equitable relief therefrom.[1] Jurisdiction is pursuant to G.L. 1956 §§ 42-35-15 and 8-2-13.
 Facts/Travel
Blue Cross is organized under and regulated by the Department of Business Regulation ("Department") pursuant to G.L. 1956 § 27-19-1 et seq., the Nonprofit Hospital Service Corporation Act, and G.L. 1956 § 27-20-1 et seq., the Nonprofit Medical Service Corporation Act. As such, it is subject to regulation by the Department under the Act.
In July of 2000, the General Assembly repealed then-existing G.L. 1956 § 27-50-1 et seq., the Small Employer Health Insurance Availability Act in its entirety and amended the statute by an enactment effective July 13, 2000.[2] P.L. 2000, chs. 200, 229. In doing so, the General Assembly delayed the repeal of existing and application of amended §27-50-5 (the rating restrictions provision) and § 27-50-6 (the renewability of coverage provision) until October 1, 2000.
In late September of 2000, a few days before the effective date of the rating restrictions provision, the Department advised Blue Cross that the Small Group Reform Act required a four-tier rating system. The four "tiers" derive from the statutory definition of "family composition" which according to the enactment means: "(1) Enrollee; (2) Enrollee, spouse and children; (3) Enrollee and spouse; or (4) Enrollee and children." § 27-50-3(q)(1-4). Although §§ 5 and 11 of the Act empower the Director to issue regulations,[3] it is undisputed that the Department had not promulgated regulations or any formal interpretation of the Act, including the definition of family composition, prior to October 1, 2000.
On or about November 2, 2000, Blue Cross informed the Department of its position that the Act did not require, and Blue Cross was not using, a four-tier rating methodology. By letter dated November 6, 2000 to the Director, United Healthcare ("United"), a Blue Cross competitor, complained that Blue Cross had not complied with the Act because it continued to rate small groups using its then-existing rating, including a two-tier rating methodology. United contended, in pertinent part, that the Act required four-tier rating. Blue Cross's failure to comply with the Act, according to United's complaint, caused it to lose small employer accounts to Blue Cross.
After the Department had determined that the Act required a four-tier rating system, the Director responded to Blue Cross's correspondence and United's complaint by issuing an Order to Show Cause and Notice of Hearing ("Order") requiring Blue Cross to appear before the Department to show cause why the Director should not order Blue Cross to cease and desist from violation of the Act. Blue Cross disputed the Department's assertion that the Act requires Blue Cross to use a four-tier rating system pursuant to the four types of family composition defined in §27-50-3(q)(1-4). Nevertheless, the Department sought an order requiring Blue Cross to:
 "(i) cease and desist from using a two tier rating structure; (ii) not write any new business subject to the Act until it implements a four tier rating system; (iii) implement and use a four tier rating system; and (iv) remediate its policies issued under the Act to small employers from October 1, 2000 to the date of its compliance with the four tier rating system requirement." Decision at 2.
Before the Hearing Officer on January 22, 2001, the parties addressed (1) whether the Act requires Blue Cross to use a four-tier rating as a matter of law and (2) if so, what sanctions should be imposed on Blue Cross for its failure to comply with the Act. Thereafter, on March 16, 2001, the Director adopted the Decision rendered by the Hearing Officer wherein the Hearing Officer declared as a matter of law that:
 "1. [Blue Cross] is organized under and regulated by the Department pursuant to [G.L.] §§ 27-19-1 et seq. and 27-20-1 et seq. and is therefore, subject to the terms and provisions of [G.L.] § 27-50-1 et seq.
 2. The legislative intent expressed in [G.L.] §§ 27-50-2 and 27-50-5(f) support construing the definition of `family composition' uniformly and objectively with respect to those entities required to comply with the Act.
 3. The Act requires the use of a four tier rating system using the four categories of `family composition' set forth in [G.L.] § 27-50-3(q)(1-4).
 4. Under [Blue Cross's] interpretation of the Act, it is impossible for a small employer carrier to comply with the mandates of [G.L.] § 27-50-5 regarding the distribution of rates among `each family composition type.'
 5. [G. L.] § 27-50-5 expressly requires those entities subject to the Act to limit the rating bands between each family composition type.
 6. The Act mandates a four tier rating system based on the four different categories of `family composition' as defined in the Act.
 7. The Department has authority to impose sanctions in this matter pursuant to [G.L.] § 42-14-16. The recommended sanctions are appropriate and necessary in order for the Department to enforce the mandates in the Act." Decision at 19-20.
Accordingly, the Hearing Officer found Blue Cross in violation of the Act. Based on the Hearing Officer's findings of fact and conclusions of law, the Director adopted the sanctions recommended by the Hearing Officer against Blue Cross for its violating the mandates in the Act.[4]
In particular, Section VII(D) of the Decision requires a four-tier rating of premiums due after March 16, 2001, the date of the Decision, for health benefit plans issued and/or renewed during the Period. In sanctioning Blue Cross, the Director relied upon G.L. 1956 §42-14-16.[5]
Before this Court, Blue Cross moved for a stay and/or temporary restraining order and contemporaneously filed this timely administrative appeal to which the Director objects. In its verified complaint, Blue Cross seeks reversal of the Decision, as well as equitable relief therefrom.
On March 29, 2001, the Motion for Stay and/or Temporary Restraining Order came before this Court. At that time, the parties agreed, with respect to the subject administrative appeal, that the dispositive issue may be whether the Act mandated that effective October 1, 2000, Blue Cross provide coverage in the small employer market only for the types of family composition as defined in § 27-50-3(q) and, thereafter, was precluded from writing two-tier family composition coverage. Accordingly, by agreement of the parties and pursuant to this Court's order, except for that issue, all legal and other issues presented in the administrative appeal have been preserved for future briefing and judicial review, if necessary. Concurrently, over the Department's objection, the Court ordered (1) a stay of section VII(D) of the Decision with respect to Blue Cross's bills for the April 1, 2001 billing cycle and (2) temporary restraint of the Department and its Director from enforcing or causing to be implemented section VII(D) with respect to the same period.
On April 19, 2001, the Hearing Officer held a hearing as specified in the Decision with respect to subsection VII(G) therein. Decision at 22. The Hearing Officer recognized that the parties had agreed to stay all enforcement aspects, except section VII(D), of the Decision until sixty days after this Court's decision on the stipulated legal issue is rendered. Thereafter, by Order dated April 23, 2001, the Department denied Blue Cross's request to stay enforcement of Section VII(D) of its Decision with respect to the May 1 billing cycle.[6] As a result, on April 25, 2001, Blue Cross returned to this Court and filed a Motion for Further Stay and/or Restraining Order along with an affidavit in support thereof to which the Department objected. In its Motion for Further Relief, Blue Cross seeks an order — (1) immediately staying section VII(D) of the Decision and (2) temporarily restraining the Director and the Department from enforcing or causing to be implemented section VII(D) of the Decision — until 60 days after the Court has rendered a decision on the stipulated legal issue.
With respect to the administrative appeal, the parties filed memoranda of law as well as reply memoranda. Unquestionably, Blue Cross, as a carrier that offers health benefit plans that provide coverage to the employees of a small employer, is subject to the Act. However, in addition to the generic challenges to an administrative decision that are found in G.L. 1956 § 42-35-15(g), Blue Cross specifically contends that the Decision is tainted by an erroneous reading of the subject statute. In particular, Blue Cross challenges the Department's finding it in violation of the statute and its determining that the statute requires a four-tier rating system based on the four categories of family composition set forth in § 27-50-3(q)(1-4). Additionally, Blue Cross contends that the penalties imposed by the Department as a result of its interpretation of the Act are in violation of constitutional and statutory protection, ultra vires, arbitrary, capricious, and/or a clearly unwarranted use of discretion. Blue Cross seeks reversal of the Department's Decision and an Order that § 27-50-1 et seq. "does not require the mandatory use of all four tiers of family composition." Further, Blue Cross seeks equitable relief to prevent enforcement or implementation of the Decision. As stated above, the sole issue immediately before this Court, a question of law, is whether the Act requires Blue Cross to rate small employer groups only for four tiers of family composition and, thus, prohibits its continuing the existing practice of offering two-tier family composition coverage on and after October 1, 2001. With respect to the question of law appealed to this Court, Blue Cross does not contest the Director's authority to construe the subject statute.
Standard of Review This Court will review a decision of the Department pursuant to G.L. 1956 § 42-35-15(g), which provides that when reviewing a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency with regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1998); Carmody v. Rhode Island Conflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986). Pursuant to this section, this Court's review is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Associates, Ltd. v. Patricia Nolan, et. al., 755 A.2d 799, 804-05 (R.I. 2000) (quoting Barrington School Comm. v. Rhode Island State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992)). "Legally competent evidence is indicated by the presence of `some' or `any' evidence supporting the agency's findings." Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993) (quoting Sartor v. Coastal Resources Management Council, 542 A.2d 1077, 1082-83 (R.I. 1988)). In conducting its review, this Court is precluded from substituting its judgment for that of the agency as to the weight of the evidence on questions of fact, Center for Behavioral Health v. Barros, 710 A.2d 680, 684 (R.I. 1998), even when this Court "might be inclined to view the evidence differently and draw inferences different from those of the agency." Johnston Ambulatory Surgical Associates, Ltd., v. Patricia Nolan, et al., at 805 (quoting Rhode Island Public Telecommunications Auth. v. Rhode Island State Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994)). This Court must affirm an agency's decision unless the agency's findings in support of its decision are completely bereft of any competent evidentiary support. Rocha v. State Public Utilities Comm'n,694 A.2d 722, 726 (R.I. 1997).
It is well-settled that an administrative agency will be accorded great deference in interpreting a statute that it administers, In re Lallo,768 A.2d 921, 926 (R.I. 2000), even when the agency's interpretation is not the only permissible interpretation that could be applied. Pawtucket Power Associates Ltd. P'ship v. City of Pawtucket, 622 A.2d 452, 456-57 (R.I. 1993). "Where the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by an agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." In re Lallo, 768 A.2d at 926 (quoting Gallison v. Bristol School Comm.,493 A.2d 164, 166 (R.I. 1985)). Questions of law, however, are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody, 509 A.2d at 458.
When the language of a legislative enactment is clear and unambiguous, a court must interpret the statute literally and accord the words of the statute their plain and ordinary meanings. Seddon v. Bonner, 755 A.2d 823, 826 (R.I. 2000). In such a case, "there is no room for statutory construction and [the court] must apply the statute as written." Id. (quoting In re Denisewich, 643 A.2d 1194, 1197 (R.I. 1994)). However, when confronted with an unclear and ambiguous statute, the court "examines statutory provisions in their entirety, attributing to the act the meaning most consistent with the policies and purposes of the Legislature." Commercial Union Insurance Co. v. Pelchat, 727 A.2d 676, 681 (R.I. 1999) (citations omitted). In determining the intent of a statute, the court examines "the language, nature and object of the statute . . . in light of the circumstances motivating its passage." Pullen v. State, 707 A.2d 686, 689 (R.I. 1998) (quoting In re Kyle S.,692 A.2d 329, 331 (R.I. 1997)). The court will "not ascribe to the legislature an intent to enact legislation that is devoid of any purpose, is inefficacious, or is nugatory." Pullen, 707 A.2d at 691. Further, the legislature is presumed to know the state of existing relevant law when it enacts or amends a statute. Simeone v. Charron,762 A.2d 442, 446 (R.I. 2000) (citing Providence Journal Co. v. Rodgers,711 A.2d 1131, 1134 (R.I. 1998)). Although the Court must give words their plain and ordinary meanings, in doing so, it must not construe a "statute in a way that would result in `absurdities or would defeat the underlying purpose of the enactment.' . . . In particular, '[i]f a mechanical application of a statutory definition produces an absurd result or defeats legislative intent, [the] [C]ourt will look beyond the mere semantics and give effect to the purpose of the act.'" Commercial Union Insurance Co., 727 A.2d at 681 (quoting Matter of Falstaff Brewing Corp., 637 A.2d 1047, 1049-50 (R.I. 1994)).
 Review of the Director's Construction of the Act
While agreeing before the Department that the Legislature passed the Act to reform the rating practices of small employer carriers, and further, that the legislation was designed to insure that all carriers rated the pertinent policies pursuant to criteria established by the Legislature, the parties nevertheless contest the language and intent of the Act. In pertinent part, the statute calls for restrictions on the premium rates for health benefit plans subject thereto. § 27-50-5. The Hearing Officer, and ultimately the Director, interpreted the Act as requiring Blue Cross to comply with the restrictions relating to premium rates, § 27-50-5, and more specifically, to conform its rates to the four categories of family composition set forth in § 27-50-3(q)(1-4). Therefore, the Director found Blue Cross in violation of the Act for continuing its prior use of a two-tier rating system for a period on and after October 1, 2000, the date that § 27-50-5 became effective.
Section 5 of the Act specifically addresses mandatory restrictions on premium rates for health benefit plans subject to the Act. §§ 27-50-5(a), 5(c). Specifically, a small employer carrier "shall develop its rates based on an adjusted community rate." § 27-50-5(a)(1). "`Adjusted community rating' means a method used to develop a carrier's premium which spreads financial risk across the carrier's entire small group population in accordance with the requirements in § 27-50-5." §27-50-3(b). Further, a small employer carrier "may only vary the adjusted community rate for: (i) Age; (ii) Gender; and (iii) Family composition."[7] § 27-50-5(a)(1). Of the three, "family composition," the disputed factor herein, "means (1) Enrollee; (2) Enrollee, spouse and children; (3) Enrollee and spouse; or (4) Enrollee and children." §27-50-3(q)(1-4). (Emphasis added.) For each health benefit plan offered by a carrier, "the highest premium rate for each family composition type shall not exceed two (2) times the premium rate that could be charged to a small employer with the lowest premium rate for that family composition type, effective two (2) years after enactment of this chapter [July 13, 2000]. § 27-50-5(a)(5). (Emphasis added.) During the first two years after the enactment, however, "the highest premium rate for each family composition type shall not exceed four (4) times the premium rate that could be charged to a small employer with the lowest premium rate for that family composition." § 27-50-5(a)(5). (Emphasis added.) In addition, until September 30, 2002, upon renewal of a health benefit plan, the renewal premium rate shall not exceed the premium rate charged by that carrier to that group during the prior rating period by more than, inter alia, "the sum of any premium changes due to changes in the size, age, gender or family composition of the group." §27-50-5(a)(6)(ii). (Emphasis added.) Finally, the premium charged for a health benefit plan may not be adjusted more frequently than annually except that the rates may be changed to reflect, inter alia, "[c]hanges to the family composition of the employee." § 27-50-5(b)(2). (Emphasis added.)
At issue is whether the statute mandates premium rating only for the four categories contained in the definition of family composition. While conceding that a small employer carrier may not create or use a type of "family composition" other than one of those enumerated in §27-50-3(q)(1-4), Blue Cross nevertheless maintains that it cannot be found in violation of the Act absent a statutory mandate requiring that a carrier use all of the family composition types. The statute, Blue Cross asserts, does not address or prohibit its established practice of rating on a two-tier basis, individual and family. In further support of its position, Blue Cross contends the use of the disjunctive "or" to separate the types of family composition within the definition of family composition dictates that wherever the term "family composition" appears in the Act, it refers to any one of the family composition types listed in § 27-50-3(q)(1-4). As a result, it contends, the carrier may choose which, if any, of the four prescribed types to offer and it is not required to offer all of them. Blue Cross asserts that unless the word "and" is substituted for the word "or" in § 27-50-3(q), the term "family composition" cannot mean that a carrier must offer all four types. Relying on Town of Scituate v. O'Rourke, 103 R.I. 499, 239 A.2d 176
(1968), Blue Cross further argues that courts do not substitute the conjunctive "and" for the disjunctive "or" when construing a statute unless such substitution is required to avoid an absurdity or correct an obvious drafting mistake.
With respect to § 5(a)(1) of the rating restrictions provision which provides that a carrier "may only vary the adjusted community rate for (i) Age, (ii) Gender and (iii) Family composition," Blue Cross contends that it means that a carrier may, but is not required to, vary the adjusted community rate for age, gender and "any of the family composition types listed in § 27-50-3(q)." As a result, Blue Cross argues, the plain language of the statute allows the carrier to choose whether to vary the adjusted community rate by "all four tiers or any combination thereof." Infusing the definition of family composition into the permissive portion of the rating restrictions provision, Blue Cross contends the four-tier rating is permissive not mandatory.
With respect to legislative intent, Blue Cross maintains that mandatory four-tier rating cannot be implied in the Act because it is not required to accomplish its purposes, including stabilization of the small employer market. Application of the adjusted community rate, not four-tier rating, it asserts, provides market stability. Further, Blue Cross argues, a carrier's possible use of a single rating tier would not produce an absurd result. Rather, Blue Cross contends, it would be absurd for the Legislature to have intended a four-tier rating system, or for the Act to be interpreted to require small employer carriers in Rhode Island to change the way they have historically operated, including their using a two-tier rating methodology, with respect to new and renewal contracts written three months after the subject enactment.
In addition, Blue Cross asserts that it learned about the Department's determination of mandatory four-tier rating on or about September 26, 2000, shortly before the October 1, 2000 effective date. Blue Cross maintains that it was impossible for it to convert its computer system or otherwise to implement a four-tier rating system before October, 1, 2000 even if the Act required it. However, Blue Cross implemented a four-tier rating system on or about April 1, 2001, as soon as it was "administratively practical," not because it was legally obligated to do so but for market competition purposes. Contrastingly, United had been able to implement a four-tier rating system by October 1, 2000, perhaps because of its previously having had to accommodate its computer system to four-tier rating in other states.
Contrary to the various assertions of Blue Cross, the Director determined that the statute mandates a four-tier rating system based on the four categories of "family composition" as defined in the Act. Further, the Director found that § 27-50-5(a)(5) expressly requires small employer carriers to limit the rating bands between each family composition type.
In determining the Legislature's intent, the Hearing Officer examined the Act in its entirety. Initially, having reviewed the purposes of the statute,[8] she found that the expressed purposes support "construing the Act to require objective, uniform rating criteria." Decision at 9. Consequently, she rejected Blue Cross's contention that the tiers were optional because "lack of uniformity among insurers would be inconsistent with the legislative purpose of improving the overall fairness and efficiency of the small group health insurance market." Decision at 10. In addition, the Hearing Officer noted that a uniform definition of `family composition' provides the Department with an objective criteria "by which to measure substantive compliance by insurers with other statutory provisions of the Act." Decision at 10. Absent mandatory four-tier rating, she reasoned, inconsistency among carriers' rating methodologies would vitiate the Legislature's intent to stabilize the small employer market.
In further support of mandatory four-tier rating, she referenced subsection (f) of the rating restrictions provision which provides:
 "[t]he director may establish regulations to implement the provisions of this section and to assure that rating practices used by small employer carriers are consistent with the purposes of this chapter, including regulations that assure that differences in rates charged for health benefit plans by small employer carriers are reasonable and reflect objective differences in plan design or coverage (not including differences due to the nature of the groups assumed to select particular health benefit plans or separate claim experience for individual health benefit plans)." § 27-50-5(f).
Despite the absence of relevant regulations, the Hearing Officer determined that the Department "cannot effectively `assure that rating practices used by small employer carriers are consistent with the purposes of [the Act]'" if the carriers depart from the four categories enumerated in § 27-50-3(q)(1-4).
The Hearing Officer construed the definition of family composition as setting forth the four acceptable classifications of the enrollee population. Logically, each enrollee can fit into only one family composition category at any given time. Additionally, she accepted as reasonable the Department's construction that the four alternative types of family composition in § 27-50-3(q)(1-4) are properly construed as allowing an enrollee to elect his or her relevant family composition type. Further, she reasoned, allowing a carrier to use one or none of the family composition categories in developing its rates would render the rating restrictions provision, § 5 of the Act, unenforceable. For example, a carrier would be unable to comply with the mandate that the highest premium rate for each family composition type not exceed four times the premium rate for the lowest premium rate for that family composition type. See § 27-50-5(a)(5). The Legislature's intent to limit the premium rate for each category of family composition would be thwarted without the four separate tiers of family composition. Moreover, without uniform family composition categories, it would be impossible for the Department to make meaningful comparisons between various coverage plans. See § 27-50-5(f). Accordingly, she concluded that the provisions of Act support a rating methodology consistent with the statutorily enumerated types of family composition.
In addition to finding Blue Cross's proffered statutory construction incongruous with a reasonable interpretation of the Act, the Director also found implausible Blue Cross' assertion that it was unable to comply with the Act by October 1, 2000. Moreover, the Director noted that the Department lacked authority to exempt a small employer carrier from statutorily imposed mandates.
 Statutory Interpretation
Due to the real or seeming ambiguity in a reading of the statute, this Court will apply rules of statutory construction to glean the intent of the statute. It is a well-settled rule of statutory construction that "[a]n express enumeration of items in a statute indicates a legislative intent to exclude all items not listed." Terrano v. State of Rhode Island, Dep't of Corrections, 573 A.2d 1181, 1183 (R.I. 1990) (quoting Murphy v. Murphy, 471 A.2d 619, 622 (R.I. 1984) (citing 2A C. Sands, Statutes and Statutory Construction § 47.23 (4th ed. 1973)). This rule is a guide that should be applied cautiously so that the principle furthers, rather than defeats, legislative intent. Terrano, 573 A.2d at 1183; Volpe v. Stillman White Co., 415 A.2d 1034, 1036 (R.I. 1980). By specifying only four types of family composition, this Court is of the opinion that the Legislature manifested its intent to exclude categories of family composition beyond the enumerated categories. See Retirement Bd. of the Employees' Retirement Sys. of Rhode Island and Cranston v. Azar, 721 A.2d 872, 879 (R.I. 1998), cert. denied, 526 U.S. 1116, 119 S.Ct. 1765, 143 L.Ed.2d 795 (1999) (By specifying only three types of payees who may receive certain pension benefits, the General Assembly manifested its intent to exclude other possible payees who fall outside the enumerated categories). Applying the aforementioned principles of statutory-construction, this Court concludes that any type of family composition that is not one of the following — an enrollee; an enrollee, spouse and children; an enrollee and spouse; or an enrollee and children — is not a category upon which a small employer carrier shall develop or may vary its rates. See §§ 27-50-3(q)(1-4), 5. Even assuming, as Blue Cross contends, the use of the disjunctive "or" within the definition of family composition means any one of the four separate types enumerated and that the carrier may choose which, if any, of the four types to offer, Blue Cross must nevertheless use a rating methodology which comports with the four separate types listed in §27-50-3(q)(1-4). See Perez v. Bay State Ambulance Hosp. Rental Service, Inc., 602 N.E.2d 570, 573 (Mass. 1992) (citing Colautti v. Franklin, 439 U.S. 379, 392-93 n. 10, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (citing 2A C. Sands, Statutes and Statutory Construction § 47.07 (4th ed. Sup. 1978) ("A definition which declares what a term means . . . excludes any meaning that is not stated.")) (Emphasis added.) Further, "it has been held that the disjunctive `or' usually, but not always, separates words or phrases in the alternate relationship, indicating that either of the separated words or phrases may be employed without the other. The use of the disjunctive usually indicates alternatives and requires that those alternatives be treated separately." 1A Norman J. Singer, Sutherland Statutory Construction § 21.14 (1992 Supp. 2001). Moreover, absent a rating methodology in compliance with the four categories of family composition in § 27-50-3(q)(1-4), as the Director notes, it would be impossible for a carrier to adhere to the rating restrictions provision, § 27-50-5(a)(5), which prescribes premium limits for each family composition type.
In support of its interpretation of the Act, the Court notes that prior to the amendment, the statute did not contain any definition of family composition. When the Legislature amended the statute by adding, inter alia, a definition of family composition, this Court must assume that it was aware that the prior statute contained no definition of family composition and that small employer carriers were free to fashion their rates according to their own categories of family composition. Further, P.L. 2000, chs. 200 and 229, addressed health reform, specifically RIte Care stabilization, small employer insurance reform and health insurers' accountability. With respect to small insurers, the General Assembly specifically recognized that "instability in the market for health insurance for small employers has contributed to the difficulties faced by employers and employees alike in maintaining affordable employer-based health insurance coverage." P.L. 2000, ch. 200, § 1; P.L. 2000, ch. 229, § 1. It expressly found, in part, "an erosion in access to affordable employer-based health insurance coverage for low-income working Rhode Islanders, particularly those employed in small businesses" due in part to "instability in the state's health insurance market as is evidenced by the economic failure of one of the state's primary health maintenance organizations, the departure of another health insurance provider from the state, a significant increase in premiums charged by health insurers remaining in Rhode Island. . . ." The General Assembly thereafter concluded that the "escalating costs of private health coverage have made it difficult for small businesses to offer and contribute to the health insurance coverage of workers and their dependents and remain profitable." P.L. 2000, ch. 200, § 1; P.L. 2000, ch. 229, § 1. Therefore, the General Assembly intended, in this enactment:
 "to utilize state resources in a fair, efficient and economical manner to assist Rhode Islanders of limited means to obtain affordable health insurance by maintaining the RIte Care Program, while assisting Rhode Islanders, wherever possible, to continue to utilize available, affordable private employer-based health insurance coverage and to stabilize the insurance market for such coverage." P.L. 2000, ch. 200, § 1; P.L. 2000, ch. 229, § 1.
Based on the foregoing, it is obvious that the Legislature intended to stabilize the small employer health insurance market, including premium rates. Despite Blue Cross's contentions, adoption of a statutory construction that would leave the categories of family composition type to a carrier would not enhance the stabilization of the small employer health insurance market or relevant premium rates. Had the General Assembly intended for a small employer carrier to vary its rates according to its own categories of family composition, including any historic two-tier rating methodology, it could have expressly provided therefor or omitted the definition of family composition in the reenactment. Although other interpretations of the Act may be possible with respect to the mandatory four-tier rating, the Director's determination does not appear to be clearly erroneous or unauthorized.
 Conclusion
For the aforementioned reasons, this Court holds that the Director neither exceeded her authority nor erred as a matter of law in determining that the Act requires small employer carriers to use a four-tier rating methodology pursuant to the four types of family composition set forth in § 27-50-3(q)(1-4). Accordingly, Blue Cross's appeal with respect to the issue of law is denied, and the Decision with respect to the Act's mandating the use of a four-tier rating system is hereby affirmed. Further, the petitioner's request for an Order that the Act "does not require the mandatory use of all four tiers of family composition" is denied. This decision concerning this question of law discussed above resolves only the controversy surrounding the Director's interpretation of the Act, as applied to the instant facts.
With respect to the above, counsel shall submit, after notice, an appropriate Order for entry.
Remaining before this Court with respect to the administrative appeal are Blue Cross's alternative grounds for appeal and the Director's objections thereto. The parties shall appear before this Court in chambers at 8:30 A.M. on September 13, 2001 to set a briefing schedule.
[1] The subject Decision and Order, designated DBR No. 00-I-0146, is dated March 16, 2001 (hereinafter "Decision").
[2] The amended statute apparently derives from a particular draft, Model Act 118 with certain revisions, of the Small Employer Health Insurance Availability Model Act adopted by the National Association of Insurance Commissioners. The Court notes that both parties reference various drafts of Model Act 118, or proceedings related thereto, as well as allegedly similar statutes of other states. The administrative record, however, does not contain evidence of either. Accordingly, the Court is unable to consider them in this administrative appeal. G.L. 1956 § 42-35-15(f) (Judicial review shall be confined to the record.); see also Rule 201 of the Rhode Island Rules of Evidence; see also Hooper v. Goldstein, 104 R.I. 32, 36-37, 241 A.2d 809, 811 (1968) (In Rhode Island, it is well-settled that the laws of other states must be averred and proven like other facts.)
[3] Within § 27-50-5, the rating restrictions provision, subsection (f) provides:
 "The director may establish regulations to implement the provisions of this section and to assure that rating practices used by small employer carriers are consistent with the purposes of this chapter, including regulations that assure the differences in the rates charged for health benefit plans by small employer carriers are reasonable and reflect objective differences in plan design or coverage (not including differences due to the nature of the groups assumed to select particular health benefit plans or separate claim experience for individual health benefit plans)."
More broadly, § 27-50-11, entitled "Administrative procedures," states, "The director shall issue regulations in accordance with chapter 42-35 for the implementation and administration of the Small Employer Health Insurance Availability Act."
[4] In section VII of its Decision, the Department imposed the following sanctions:
 "A. [Blue Cross] be ordered to cease and desist from issuing and/or renewing any health insurance plans to small employers pursuant to the Act unless and until the rating system used to establish the rates for said coverage uses all four tiers within the definition `family composition' under [G.L.] § 27-50-3(q)(1-4).
 B. With respect to all health insurance plans previously issued or renewed for small employers pursuant to the Act during the Period [October 1, 2000 to the date of the Decision, March 16, 2001], [Blue Cross] shall develop a four tier rating system applicable to said plans [the Carve Out Group]. [Blue Cross] shall take whatever steps necessary to recalculate premium rates for each health benefit plan issued and/or renewed during the Period, and determine what premiums would have been payable by each such plan using the mandatory four tier rating system. [Blue Cross] shall provide to the Hearing Officer an accounting of and supporting documentation for all premium payments made under said health benefit plans (under the two tier system) which exceed the rate that would have been payable had the rates been determined using the four tier system. The difference between the higher premium paid under a two tier system and the lower premium that would have been payable for the Period using the four tier rating system shall be refunded to the person/entity that made the payments.
 C. In recalculating the premiums for the Period, if [Blue Cross] determines that any person/entity paid less in premiums using the two tier system than it would have paid under a four tier rating system, [Blue Cross] shall provide the Hearing Officer with an accounting of and supporting documentation for all premium payments made under said health benefit plans which are less than the premium payments that were paid for the Period. Since it would be inequitable for persons/entities to be retroactively charged for underpayments caused by [Blue Cross's] use of a two tier as opposed to a four tier rating system, the difference between said lower premium paid for the Period and the higher premium that would have been paid for the Period using the four tier rating system shall constitute part of the administrative penalty payable in this matter by [Blue Cross].
 D. All premiums due for periods subsequent to the date of this Decision for health benefit plans issued and/or renewed during the Period shall be calculated using a four tier rating system consistent with the definition of `family composition' under the Act.
 E. In addition to the administrative penalty referred to in C above, [Blue Cross] shall pay an administrative penalty of ten thousand dollars ($10,000.00) for its failure to use a four tier rating system consistent with the definition of `family composition' in [G.L.] § 27-50-5(a)(5).
 F. [Blue Cross] shall submit the above referenced accountings and documentation to the Hearing Officer and Department by April 12, 2001.
 G. A hearing to (i) review the accountings and supporting documentation submitted pursuant to this Decision; (ii) set the date by which the above referenced refunds shall be made; and (iii) calculate the exact amount of the administrative penalty payable under this Decision shall be held on April 19, 2001 at 9:30 a.m." Decision at 20-22.
[5] Rhode Island General Laws 1956 § 42-14-16 provides:
 "(a) Whenever the director shall have cause to believe that a violation of title 27 or the regulations promulgated thereunder has occurred by a licensee, the director may, in accordance with the requirements of the Administrative Procedures Act, chapter 35 of this title:
 (1) Revoke or suspend a license;
 (2) Levy an administrative penalty in an amount not less than one hundred dollars ($100) nor more than fifty thousand dollars ($50,000);
 (3) Order the violator to cease such actions;
 (4) Require the licensee to take such actions as are necessary to comply with title 27 or the regulations thereunder; or
 (5) Any combination of the above penalties.
 (b) Any monetary penalties assessed pursuant to this section shall be as general revenues."
[6] This Order addresses only the limited motion for stay with respect to the May 1 billing cycle; the Hearing Officer indicated that other issues raised at the April 19 hearing would be addressed in a separate decision. Order (April 23, 2001) at 2.
[7] Additionally, the statutory provision allows for health status to be considered as a factor on a limited basis. § 27-50-5(a)(2). However, the health status factor is not pertinent to this matter.
[8] Section 27-50-2 provides:
 "(a) The purpose and intent of this chapter are to enhance the availability of health insurance coverage to small employers regardless of their health status or claims experience, to prevent abusive rating practices, to prevent segmentation of the health insurance market based upon health risk, to spread health insurance risk more broadly, to require disclosure of rating practices to purchasers, to establish rules regarding renewability of coverage, to limit the use of preexisting condition exclusions, to provide for development of `economy,' `standard,' and `basic' health benefit plans to be offered to all small employers, and to improve the overall fairness and efficiency of the small group health insurance market. (b) This chapter is not intended to provide a comprehensive solution to the problem of affordability of health care or health insurance."